IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DYNAMIC CAMPUS SOLUTIONS, )
INC., )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )        1:17CV906
                                        )
PFEIFFER UNIVERSITY,                    )
                                        )
            Defendant.                  )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Defendant Pfeiffer University's Motion to Dismiss Counts II through IV of Plaintiff Dynamic Campus Solutions, Inc.'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Docket Entry 12.) Plaintiff has filed a response. (Docket Entry 17.) The matter is ripe for disposition. For the following reasons, the Court will recommend Defendant's motion to dismiss be granted in part and denied in part.

## I. BACKGROUND

This action arises from an information technology services agreement ("IT Agreement") between Plaintiff and Defendant. (*See generally* Complaint, Docket Entry 1.) According to Plaintiff, the parties executed the IT Agreement on or about September 23, 2016, whereby Plaintiff agreed to provide certain information technology services to Defendant. (*Id.* ¶ 5.) Plaintiff states that initially the business relationship was great and Defendant public and privately commended Plaintiff's work. (*Id.* ¶ 6.) However, on or about August 8, 2017, Defendant sought to renegotiate the IT Agreement with Plaintiff, whereby Plaintiff would

agree to take an 80% reduction in compensation for the services it provided to Defendant. (*Id.* ¶ 7.) Plaintiff declined to do so and Defendant refused to consider any other restructuring options. (*Id.* ¶¶ 7-8.) Plaintiff states that during this time, Defendant had no assertions regarding any breach under the IT Agreement. (*Id.* ¶ 9.) Shortly thereafter, in a letter dated October 3, 2017 (the "Termination Letter"), Defendant falsely asserted that Plaintiff breached the IT Agreement and purported to terminate the contract. (*Id.* ¶ 10.) Plaintiff alleges that it was Defendant who was in breach of the IT Agreement, being seriously delinquent in payments until one month before sending the Termination Letter. (*Id.* ¶ 11.) While covering five monthly payments in arrears, Defendant failed to provide payment for any late fees incurred pursuant to the IT Agreement. (*Id.*) Plaintiff states that Defendant is having financial issues and its "apparent buyer's remorse with regard to the [IT] Agreement is no justification for its actions." (*Id.* ¶¶ 12-13.)

After receiving the Termination Letter, Plaintiff informed Defendant that it was ready, willing and able to perform under the IT Agreement, but Defendant refused to allow Plaintiff to continue performance. (*Id.* ¶ 14.) As a result of Defendant's alleged breach, Plaintiff has suffered a significant injury in excess of $75,000.00. (*Id.* ¶ 15.) Plaintiff raises 4 causes of action against Defendant: (1) breach of contract for failing to pay late fees, failing to allow the right to cure any alleged defaults, and refusing Plaintiff's tender of continued performance; (2) breach of covenant of good faith and fair dealing for manufacturing false breaches of the IT Agreement, interfering in Plaintiff's performance of services, and wrongful termination; (3) defamation per se for making false and defamatory statements about Plaintiff to third parties which were likely to cause harm to Plaintiff's professional reputation; and (4) a claim under

2

the North Carolina Unfair and Deceptive Trade Practices Act for Defendant's defamatory statements which were injuries to Plaintiff in its profession. (*Id.* ¶¶ 19-39.)

On November 30, 2017, Defendant filed the pending motion to dismiss Counts II through IV of Plaintiff's Complaint. (Docket Entry 12.) Plaintiff filed a response brief and Defendant thereafter filed a reply. (Docket Entries 17, 21.)

## II. DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons & United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is *plausible* on its face.") (emphasis in original) (internal citation and quotation marks omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a

claim that makes it plausible she is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

### 1. Count II (Breach of Covenant of Good Faith and Fair Dealing)

Defendant first argues that Plaintiff's claim for breach of covenant of good faith and fair dealing should be dismissed because this claim and Plaintiff's breach of contract claim "rely on the same facts." (Docket Entry 13 at 4.) "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Williams v. Craft Dev., LLC*, 199 N.C. App. 500, 506, 682 S.E.2d 719, 723 (2009) (internal quotation marks and citation omitted). Where the claim for breach of good faith is "part and parcel" of a similar claim for breach of an express term of the contract claim, that claim will rise and fall with the other breach of contract claim. *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (quoting *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 472 S.E.2d 358, 368 (1996)). The covenant of good faith and fair dealing is an implied term, therefore it cannot be used to contradict the express terms of a contract. *Rich Food Servs., Inc. v. Rich Plan Corp.*, 98 F. App'x 206, 211 (4th Cir. 2004) (unpublished) (citing *Campbell v. Blount*, 24 N.C. App. 368, 371, 210 S.E.2d 513, 515 (1975)). "This understanding conforms with the central purpose of the implied duty of good faith, which is to allow enforcement of a vague or incomplete agreement that the ratifying parties intended to be binding but that lacks certain terms essential to proper contract formation." *Performance Sales & Mktg., LLC v. Lowe's Companies, Inc.*, No. 5:07CV140, 2010 WL 2294323, at *10 (W.D.N.C. June 4, 2010) (unpublished) (citing *Ultra Innovations, Inc. v. Food Lion, Inc.*, 130 N.C. App. 315, 317, 502 S.E.2d 685, 687 (1998)). In such

4

cases, "the duty of good faith provides the missing terms of the agreement that necessarily flow from the parties' intentions, thus allowing enforcement of the contract." *Id.*

In instances where a claim for breach of the covenant of good faith and fair dealing is accompanied with a breach of contract claim, "the weight of North Carolina authority holds that a claim for breach of covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately." *Exact Scis. Corp. v. Blue Cross & Blue Shield of N. Carolina*, No. 1:16CV125, 2017 WL 1155807, at *13 (M.D.N.C. Mar. 27, 2017) (citation omitted) (unpublished). *See also, Shelley's Jewelry*, 127 F. Supp. 2d at 787; *Mech. Indus. v. O'Brien/Atkins Assocs., P.A.*, No. 1:97CV99, 1998 U.S. Dist. LEXIS 5389, at *11 (M.D.N.C. Feb. 4, 1998) (noting that North Carolina recognizes a separate cause of action for breach the covenant of good faith and fair dealing only in limited circumstances involving special relationships between the parties, such as cases involving funeral services and insurance contracts).

Here, Defendant argues that although worded differently, Plaintiff's claims are substantively duplicative. (Docket Entry 21 at 4.) Plaintiff argues that the two claims are based upon separate allegations; that is, Plaintiff's breach of contract claim alleges that Defendant wrongly sent the Termination Letter, failed to pay late fees and failed to provide the notice and the right to cure the IT Agreement, while Plaintiff's second cause of action is based upon making false assertions of breaches and interfering with Plaintiff's ability to perform under the IT Agreement. (Docket Entry 17at 5; *see also* Compl. ¶¶ 10, 20, 23-26.) The Court finds Plaintiff's argument here unpersuasive. As Defendant argues, Plaintiff's claim for breach of covenant of good faith and fair dealing, although stated differently, is essentially

5

based upon the same underlining allegations in its breach of contract claim. Plaintiff asserts that Defendant "breached its duties of good faith and fair dealing by manufacturing false breaches of the [IT] Agreement . . . interfering in Plaintiff's performance of services, and by wrongly terminating the [IT] Agreement pursuant to the Termination Letter." (Compl. ¶ 24.) Plaintiff then proceeds to discuss one of the purported grounds discussed in the Termination Letter. (*Id.* ¶¶ 25-26.) These are all underlining facts that would support Plaintiff's breach of contract claim. Thus, the two claims should not be pursued separately. *Exact Scis.*, 2017 WL 1155807, at *13 ("Because [Plaintiff] bases its breach of the duty of good faith and fair dealing on the same factual allegations as form its breach of contract claim, the former cannot be pursued independently."); *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 1:12CV1129, 2014 WL 2968139, at *5 (M.D.N.C. July 1, 2014) (unpublished) (finding that "Plaintiff's separate cause of action for breach of the covenant of good faith and fair dealing should be dismissed as duplicative of its breach of contract claim"). In sum, Defendant's motion should be granted as to Count II of Plaintiff's Complaint.

    2. <u>Count III (Defamation Per Se)</u>

Defendant also moves to dismiss Plaintiff's claim for defamation per se. (Docket Entry 13 at 5-8.) The Court evaluates a defamation claim by applying state substantive law and federal procedural law. Federal Rule of Civil Procedure 8 specifying the general pleading requirements in federal court "does not contain a special pleading requirement for defamation." *Wuchenich v. Shenandoah Mem'l Hosp.*, No. 99-1273, 215 F.3d 1324 (table), 2000 WL 665633, at *14 (4th Cir. May 22, 2000) (unpublished); *see also TMM Data, LLC v. Braganza*, No. 5:14-cv-729, 2015 WL 4617326, at *5 (E.D.N.C. July 31, 2015) (explaining that, "unlike

6

fraud claims, there is no heightened pleading standard for [defamation]"); *Exclaim Mktg. v. DIRECTV, Inc.*, No. 5:11-cv-684, 2012 WL 3023429, at *8 (E.D.N.C. July 24, 2012) ("[N]either the [Rules] nor the Fourth Circuit impose a special or heightened pleading standard for defamation." (internal quotation marks omitted)). Therefore, "the liberal pleading requirement of Rule 8(a) requiring only a short and plain statement showing the pleader is entitled to relief applies" to Plaintiff's defamation claim. *Moore v. Cox*, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004).

Under North Carolina law, "[i]n order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002), *writ denied, review denied, appeal dismissed,* 357 N.C. 163, 580 S.E.2d 361 (2003). "It is well settled that false words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable, and words so uttered may be actionable *per se*." *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955). The North Carolina Supreme Court further explained:

> in order to be actionable without proof of special damage, the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. That is to say, it is not enough that the words used tend to injure a person in his business. To be actionable *per se*, they must be uttered of him in his business relation. Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business.

*Id.* (citations omitted). "In pleading a cause of action for defamation, a plaintiff must recount the allegedly defamatory statement either verbatim or at least with enough specificity to allow

7

the Court to decide if the statement is defamatory." *Jolly v. Acad. Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005).

Here, Plaintiff's Complaint alleges that Defendant made false and defamatory statements (contained in the Termination Letter) to third parties, including "other higher education customers and potential customers of Plaintiff." (Compl. ¶¶ 17, 29.) Plaintiff further alleges that Defendant knew these statements would likely cause Plaintiff injury to its professional reputation. (*Id.* ¶ 30.) The Court concludes that Plaintiff has alleged enough facts sufficient to state a claim for defamation per se. Although not specifically articulated in the Complaint as to which statements in the Termination Letter are defamatory, the Court can infer from review of the letter itself as to the defamed language which Plaintiff has incorporated in the Complaint by reference of the Termination Letter. Among other things, the Letter states that Plaintiff's "professional staff was not competent to perform the services they were assigned to perform," and that Plaintiff was "incapable of completing" services which is was obligated to under the IT Agreement. It also stated that Plaintiff's "delays and failure to provide technical support and complete tasks simply do not meet the professional standards expected of IT service companies working for universities." (Docket Entry 17-1 at 1-2.) These statements, uttered in connection with a business relation, touch Plaintiff in its profession and would be injuries to Plaintiff's business. As such, Plaintiff has alleged a plausible claim for defamation per se.

Defendant argues that Plaintiff has not alleged an actionable defamatory statement, and that the Court should not consider the contents of the Termination Letter because it was not attached to the Complaint, nor was it attached to Defendant's motion. (Docket Entries 13 at

8

Case 1:17-cv-00906-TDS-JLW   Document 22   Filed 04/20/18   Page 8 of 12

5-6, 21 at 1-2.) Although Defendant is correct that the Termination Letter was not attached to the Complaint, "the court may consider documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D.W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 & n.2 (4th Cir. 2009) (analyzing extrinsic evidence presented by both parties in the context of a motion to dismiss using the same standard)). Here, the Termination Letter is integral to and explicitly stated in the Complaint (*see* Compl. ¶ 10), and thus can be considered. *Putsche v. Alley Cat Allies, Inc.*, No. PWG-17-255, 2018 WL 784615, at *2 (D. Md. Feb. 8, 2018) (unpublished) (citation omitted) ("Courts also may consider documents attached to an opposition to a motion to dismiss, if they are 'integral to and explicitly relied on in the complaint' and the plaintiff 'agrees that the [documents] are authentic.' "); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. JFM-10-CV-0206, 2010 WL 2732334, at *2 n.2 (D. Md. July 8, 2010) (unpublished) ("The same standard [applied to documents attached to a motion to dismiss also] applies to documents attached to a plaintiff's response in opposition.").

Defendant also argues that the Complaint only contains a conclusory assertion that the alleged defamation statements were shared, and does not specificity when and how the statements were published. (Docket Entry 13 at 6.) The Termination Letter is dated October 3, 2017 and this action commenced on October 10, 2017. Thus, any publication of the Termination Letter to Plaintiff's potential customers would have occurred the week prior to the filing of this lawsuit. Defendant also asserts that it is unclear as to whether Plaintiff's claim even falls under North Carolina law because Plaintiff has not alleged where the defamed

9

statements took place. (Docket Entry 13 at 5 n.1.) Indeed, the Complaint does not specify where the communications of the Termination Letter were shared or where the prospective customers were located. However, the Complaint does allege that Plaintiff is a California corporation with a principle place of business in Texas, while Defendant is a North Carolina corporation with its principal place of business in North Carolina. (*See* Compl. ¶¶ 2, 3.) Having such various connections, "further factual development remains necessary to establish the particular location(s) where Defendant allegedly conveyed the defamatory reports to Plaintiff's prospective [customers]." *Terry v. Swift Transportation*, No. 1:16CV256, 2017 WL 1013074, at *7 (M.D.N.C. Mar. 14, 2017) (unpublished), *report and recommendation adopted*, No. 1:16CV256, 2017 WL 2881141 (M.D.N.C. July 6, 2017). Since the Court cannot concretely "resolve the choice-of-law question at this juncture," (*id.*), "the Court should consider first whether Plaintiff's defamation claim suffices under North Carolina law, as it constitutes one of the potentially applicable bodies of laws and remains the one upon which Defendant [and Plaintiff] has focused." *Id.* (citation omitted). As previously stated, Plaintiff has stated a claim for defamation under North Carolina law. While "[i]t is true that [Plaintiff] has not pled these claims with the specificity that some courts would require in a defamation action[,] [n]evertheless, [Plaintiff] has provided at least enough information to put Defendant[ ] on notice as to the type of claim they face." *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 763 (M.D.N.C. 2004) (citation omitted). Thus, Defendant's motion should be denied as to Count III of Plaintiff's Complaint. *See Terry*, 2017 WL 1013074, at *9 (citation omitted) ("As the Amended Complaint alleges that Defendant reported to third parties false information about Plaintiff that harmed Plaintiff's employment prospects, it states a plausible

10

North Carolina defamation claim."); *Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc.*, No. 1:07CV169, 2008 WL 4005738, at *6 (M.D.N.C. Aug. 25, 2008) ("[I]n light of Federal Rule of Civil Procedure 8(a), which does not require a defamation claim to be pled with particularity, the Court concludes that Plaintiff's allegations are sufficient to establish a prima facie case of slander *per se*.").

3. Count IV (UDTPA)

Lastly, Defendant seeks to dismiss Plaintiff's claim under the UDTPA. (Docket Entry 13 at 8-9.) Under the UDTPA, "unfair methods of competition" and "unfair or deceptive acts or practices" are declared unlawful. N.C. Gen. Stat. § 75-1.1. To state a claim under this section, a plaintiff must allege sufficient facts to show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff. *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). "Defamation *per se* impeaching a party in its business activities may constitute an unfair or deceptive act in or affecting commerce under § 75–1.1." *Mkt. Choice, Inc. v. New England Coffee Co.*, No. 5:08-CV-90, 2009 WL 2590651, at *11 (W.D.N.C. Aug. 18, 2009) (unpublished) (citing *Ellis v. Northern Star Co. .*, 326 N.C. 219, 225, 388 S.E.2d 127, 131 (1990) (holding that libel *per se* constituted an unfair or deceptive act); *Ausley v. Bishop*, 133 N.C. App. 210, 216, 515 S.E.2d 72, 77 (1999) (extending the rule to slander *per se* )). Here, Plaintiff's Complaint sufficiently alleges a claim for defamation and further alleges that it has suffered actual damages as a result of Defendant's acts. (*See* Compl. ¶¶ 28-39.) As such, Plaintiff has stated a plausible UDTPA claim and Defendant's motion should be denied on this issue. *Exclaim*, 2012 WL 3023429, at *9 (denying defendant's motion to dismiss plaintiff's

11

UDTPA claim because "[plaintiff] has sufficiently stated a claim for defamation *per se* related to its business activities, . . . and has also alleged that [defendant's] acts injured [plaintiff] through loss of business").

## III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss be (Docket Entry 12) be **GRANTED IN PART AND DENIED IN PART**, in that the Court should only dismiss Plaintiff's second cause of action for breach of implied covenant of good faith and fair dealing.[1]

                                                   /s/ Joe L. Webster
                                                   Joe L. Webster
                                               United States Magistrate Judge

April 20, 2018
Durham, North Carolina

---

[1] In its opposition brief, Plaintiff states that "[t]o the extent that the Court determines that any of Plaintiff's claims are insufficiently pleaded, Plaintiff should be afforded opportunities to cure the same pursuant to Rule 15, and not dismissed with prejudice as Defendant requests." (Docket Entry 17 at 15.) The Court notes that Plaintiff did not amend its Complaint as a matter of right within 21 days of Defendant filing its motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1). Furthermore, Plaintiff has not formally asked the Court (through oral or written motion) for leave to amend its Complaint, nor has a proposed amended Complaint been submitted to the Court. "A responsive brief is not an appropriate means to request leave to amend a complaint." *TransEnterix Inv'r Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740, 762 (E.D.N.C. 2017). Thus, where "the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, 'the district court [does] not abuse its discretion in failing to give the plaintiff[ ] a blank authorization to 'do over' [its] complaint.' " *Estrella v. Wells Fargo Bank, N.A.*, 497 F. App'x 361, 362 (4th Cir. 2012) (per curiam) (unpublished) (citing *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009). Additionally, "[t]his Court's local rules also require that any motion for leave to file an amended complaint include a copy of the proposed amended pleading." *U.S. ex. rel. Walterspiel v. Bayer A.G.*, No. 1:12CV773, 2014 WL 7332303, at *6 (M.D.N.C. Dec. 19, 2014) (citing M.D.N.C. LR 15.1), *subsequently aff'd sub nom. U.S. ex rel. Walterspiel v. Bayer AG*, 639 F. App'x 164 (4th Cir. 2016). Having failed to do so, Plaintiff's request should be denied.

12